U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the order of the Court.**

**Signed December 6, 2005**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| MARSHALL STEWART PHILLIPS III, | § | CASE NO. 04-60339-RLJ-11 |
| | § | |
| DEBTOR | § | |

## <u>MEMORANDUM OPINION</u>

Marshall Stewart Phillips III ("Phillips"), the debtor in this bankruptcy case, objects to the claim of Samuel Cardenas ("Cardenas"). Cardenas filed a claim in this case as an unsecured claim for $56,952.19. The filed claim represents payments in the amount of $16,539.16 made by Cardenas to Phillips under a contract for deed for the purchase of a 100-acre tract of land in Sutton County, Texas.[1] Cardenas's claim is based on breach of contract and waiver; false, misleading, and deceptive acts or practices; and statutory real estate fraud. Cardenas alleges that the "false, misleading and deceptive acts" by Phillips warrant a trebling of the damages. Cardenas

---

[1]As reflected in the statement of facts, the actual amount of the payments was $17,039.16.

also asserts attorney's fees of $7,334.71. Phillips contends that Cardenas's claim should be disallowed on the basis that the contract for deed was properly terminated by Phillips and that there is no factual or legal basis for the claim.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). This Memorandum Opinion contains the Court's findings of fact and conclusions of law. Bankruptcy Rule 7052.

**Statement of Facts**

Phillips, as seller, and Cardenas, as buyer, entered into a contract for deed on August 19, 2002, regarding a 100-acre tract of land in Sutton County, Texas. The sales price under the contract was $57,500, payable by a total down payment of $10,000 with the remaining principal balance of $47,500 payable in regular monthly installments of $576 beginning September 15, 2002. The monthly installment payments were payable to Jennings-Sefcik Investments, Inc., a creditor of Phillips. Cardenas took possession of the 100 acres on July 8, 2002. The property was intended for use by Cardenas as recreational and hunting land. It was not used as Cardenas's residence and did not have facilities for such use.

The contract for deed provides as follows:

Property:

100 acres in the northeast corner of Section #21, said 100 acres to border on the north the 100 acres previously conveyed to John Rivera and said 100 acres to border the Johnny Martinez tract on its east line and the Marshall Stewart Phillips tracts on the south and west lines. *The said 100 acres will be surveyed, and a metes and bounds legal description of the survey will be attached to this Contract within 90 days of the effective date of this Contract, and said survey will be a part of this Contract for all purposes.*

(Emphasis added.)

- 2 -

The contract for deed was a consolidation of two prior contracts for the sale and purchase of two 50-acre tracts. The first contract was dated July 8, 2002, the second was dated August 15, 2002. A down payment of $5,000 required under the July 8, 2002 contract was paid on that date in San Antonio, Texas. A down payment of $3,000 required under the August 15, 2002 contract was paid on that date, also in San Antonio, Texas. An additional down payment of $2,000 required under the August 15 contract was made on September 15, 2002.

The $576 installment payment due on September 15, 2002, pursuant to the August 19, 2002 contract for deed, was not made on its due date. Cardenas did, however, make a payment of $500 on August 9, 2002.[2] Cardenas made monthly installment payments in the amounts of $576 and $1,152 on October 27, 2002 and December 12, 2002, respectively.

The 100-acre property described in the August 19, 2002 contract for deed was not surveyed within the ninety days as contemplated by the contract. Neither Phillips, as seller, nor Cardenas, as buyer, ordered or procured the survey. Phillips testified that he agreed to provide the survey.

Cardenas ceased making the installment payments beginning with the payment due January 15, 2003 and did not make the regular monthly payments due from January through July 2003. His stated basis for failing to make the payments was because Phillips had failed to obtain the survey required under the contract for deed.

On March 17, 2003, Phillips sent Cardenas a notice letter purporting to terminate the contract for deed and that the payments made by Cardenas were being retained as liquidated

---

[2]There was some dispute regarding this payment. Phillips claimed ignorance of the payment and Cardenas did not assert the payment until trial. It appears this payment was made in accordance with the initial July 8, 2002 contract.

damages. In August 2003, however, without prior notice, either oral or written, from Cardenas

to Phillips, Cardenas mailed Jennings-Sefcik Investments, Inc. a check in the amount of $4,811.16

dated August 9, 2003. The check was accompanied by a letter dated August 9, 2003, addressed

to "Muriel C. Phillips, Estate and M. Stewart Phillips III" which stated as follows:

> Under the terms of the Contract for Deed, for 100 acres of land, which was entered
> into on August 20, 2002 by the Muriel C. Phillips Estate and myself, I am enclosing
> a check for the amount of $4,608.00 plus annual interest rate on Matured Unpaid
> Amounts which is $203.16, for a total of $4,811.16. This covers payments for
> January thru August 2003.

After discovering that the August 9, 2003 check had been sent by Cardenas and deposited

by Jennings-Sefcik, Phillips requested that Jennings-Sefcik return the funds represented by the

check to Cardenas. Jennings-Sefcik Investments, Inc. refused to return or refund the proceeds of

the August 9, 2003 check and applied it to other indebtedness owing by Phillips to Jennings-

Sefcik.

Cardenas attempted to make another payment by check dated November 10, 2003, sent to

Jennings-Sefcik Investments, Inc. Such check was not deposited by Jennings-Sefcik and was

subsequently returned to Cardenas's attorney by the attorney for Phillips on April 19, 2004.

A summary of Cardenas's payments to Phillips under the contract for deed is set forth as

follows:

| Date of Payment | Amount |
| --- | --- |
| 7/8/02 | $ 5,000.00 |
| 8/9/02 | 500.00 |
| 8/15/02 | 3,000.00 |
| 9/15/02 | 2,000.00 |
| 10/27/02 | 576.00 |
| 12/12/02 | 1,152.00 |
| 8/9/03 | 4,811.16 |

- 4 -

                    Total                                    $17,039.16

The evidence of the total sum paid, $17,039.16, amends Cardenas's filed claim which reflects an

amount of $16,539.16. As a result, through the December 15 installment, Cardenas was

approximately $76 in arrears under the August 19, 2002 contract for deed.

      Phillips failed to timely provide surveys in prior transactions with other purchasers under

contracts for deed, specifically sales to Johnny Martinez and to Fred Jimenez and to Johnny

Rivera. Surveys were ultimately provided on these transactions, but not until the purchasers had

completed their payments. The evidence also reveals that in July 2002 Phillips had failed to pay

for a survey in another transaction, thereby potentially jeopardizing his ability to procure a survey.

### Discussion

      By his claim, as amended, and pleadings filed in response to Phillips's objection to his

claim, Cardenas asserted various legal theories – breach of contract and waiver; false, misleading,

and deceptive acts or practices; and statutory real estate fraud. At trial, however, Cardenas based

his claim solely on statutory real estate fraud. In closing argument, counsel for Cardenas stated

that statutory real estate fraud was his most viable theory and was the only one argued. In

addition, the Court notes that Cardenas does not assert a continued right to the 100-acre tract

subject of the contract for deed; no argument was made or evidence submitted in support of any

deceptive trade practice on the part of Phillips. In short, the Court is satisfied that the conduct of

the parties, particularly Cardenas, as gleaned from the evidence and as reinforced by Cardenas's

argument at trial, reveals the parties ultimately treated the contract for deed as terminated. The

Court will therefore address Cardenas's claim of recovery based on statutory real estate fraud.

The elements of statutory real estate fraud are: (1) a material misrepresentation; (2) that was made to induce a person to enter a contract; (3) that was relied upon by the person in entering the contract; and (4) that caused injury. TEX. BUS. & COM. CODE ANN. § 27.01(a)(1) (Vernon's 2002). In order to recover for a violation of section 27.01, a plaintiff must show (1) a representation of a material fact was made; (2) the representation was false; (3) the representation was made to induce a person to enter a contract; (4) the person relied upon that representation in entering the contract; and (5) the false representation caused an injury. *See Larsen v. Carlene Langford & Assocs., Inc.*, 41 S.W.3d 245, 249 (Tex. App.–Waco 2001, pet. denied).

The representation at issue is that a survey would be done of the property within ninety days of the effective date of the contract with a copy of the survey attached to the contract. The contract does not specifically state that Phillips will provide the survey, but Phillips admitted that he was responsible for providing the survey. The Court concludes that this representation was false at the time it was made, August 19, 2002. Phillips did not intend to provide the survey within ninety days as promised. Phillips had failed to timely provide a survey as promised in other contracts for deed. He had also failed to pay a surveyor and there was a question whether he could obtain the services of a surveyor to provide a survey. At best, Phillips did not intend to provide a survey until he absolutely had to provide one, perhaps at the time Cardenas completed making payments under the contract for deed. Phillips's history regarding other similar contracts simply defies his explanation that he failed to provide the survey because Cardenas was habitually late in making payments. The survey was to be provided by the middle of November 2002, at which time Cardenas was essentially current on his payments.

In evaluating the elements of statutory real estate fraud, the Court is satisfied that, if this false representation caused an injury, the injury would be measured by the payments made by Cardenas under the contract for deed. Cardenas made total payments in the amount of $17,039.16. The critical question is whether Cardenas relied upon Phillips's representation in entering the contract. In evaluating the objective evidence before the Court, the Court concludes that this element has not been met. Although Cardenas testified he would not have signed the contract without the representation regarding the survey, the evidence indicates otherwise. Cardenas took possession in July of 2002 immediately upon signing the first contract. He also proceeded to use the property for recreational, *i.e.* hunting, purposes. The precise boundary lines of the property were not considered critical from the outset. Moreover, Cardenas does not argue that he did not receive a full 100 acres under the contract for deed. The issue regarding the survey relates only to identifying the actual boundary lines of the property. In addition, Cardenas attempted to revive the contract in August 2003, indicating, at least to some extent, his desire to go forward under the contract despite no survey having been provided.[3] Under such facts and circumstances, the Court concludes that the representation regarding the survey was not relied upon by Cardenas in entering into the contract. Having failed to satisfy this element of the cause of action, Cardenas's claim for statutory real estate fraud must fail.

The next question is whether Cardenas is entitled to *any* claim in light of the facts and circumstances of this case. Cardenas made payments in the amount of $4,811.16 after the contract was terminated in an attempt to revive the contract. At trial, Cardenas did not contend

---

[3]In fairness, Cardenas's attempt to revive the contract also reflects his desire to keep the property and realize some benefit in return for the payments he had made.

that the contract was still in place and therefore must concede that the $4,811.16 payment on

August 9, 2003 did not revive the contract.[4] However, equity and good conscience dictate that

Cardenas holds a claim for the $4,811.16 payment made after termination of the contract. *See*

*Staats v. Miller*, 150 Tex. 581, 243 S.W.2d 686-88 (Tex. 1951) (holding that the only thing that

needs to be proved in a claim for money had and received "is that defendant holds money which in

equity and good conscience belongs to [the plaintiff]"; *see also Tri-State Chemicals, Inc. v.*

*Western Organics, Inc.*, 83 S.W.3d 189, 194-95 (Tex. App.– Amarillo 2002, pet. denied).

Moreover, the Court is satisfied that Cardenas's claim, being rooted in a contract claim, entitles

him to a portion of his pre-petition attorney's fees incurred in asserting his rights to such claim.

*See* TEX. REV. CIV. PRAC. & REM. CODE § 38.001 (Vernon's Supp. 2002). Cardenas seeks

recover of pre-petition attorney's fees of $5,725.75. In reviewing the statements entered into

evidence regarding attorney's fees, the Court notes the sum of at least $2,565 relates to

Cardenas's asserted deceptive trade practices claim. In evaluating the balance of the statements

submitted in support of his claim of attorney's fees, the Court finds that the sum of $1,500 is fair

and reasonable as a recovery for attorney's fees for Cardenas's claim in this case. The Court will

therefore allow Cardenas an unsecured claim in the amount of $6,311.16.

### End of Memorandum Opinion ###

---

[4]Cardenas made the $4,811.16 payment upon advice of counsel, attempting to revive the contract. The Court has determined that as of August 9, 2003, when his payment was made, Cardenas was attempting to revive the contract. However, by time of trial Cardenas had effectively abandoned any theory that was premised upon the continued existence of the contract.